UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------------

PHH MORTGAGE CORPORATION,

                        Plaintiff,

                    v.

PANSY ALLWOOD; NEW YORK STATE
DEPARTMENT OF TAXATION AND FINANCE;
NEW YORK CITY ENVIRONMENTAL
CONTROL BOARD; NEW YORK CITY
PARKING VIOLATIONS BUREAU; NEW YORK
CITY TRANSIT ADJUDICATION BUREAU,

"JOHN DOE #1" through "JOHN DOE #12," the
last twelve names being fictitious and unknown to
Plaintiff, the persons or parties intended being the
tenants, occupants, persons or corporations, if any,
having or claiming an interest in or lien upon the
premises, described in the complaint,

                      Defendants.

-----------------------------------------------------------------

**MEMORANDUM & ORDER**
25-CV-5639 (MKB)

MARGO K. BRODIE, United States District Judge:

Plaintiff PHH Mortgage Corporation commenced the above-captioned action on October 8, 2025 against Defendants Pansy Allwood, New York State Department of Taxation and Finance, New York City Environmental Control Board, New York City Parking Violations Bureau, New York City Transit Adjudication Bureau, and John Doe #1 through John Doe #12 (collectively, "Defendants"), to foreclose on a mortgage encumbering a property located at 526 East 56th Street, Brooklyn, New York 11203 (the "Property") under New York Real Property Actions and Proceedings Law ("RPAPL") § 1301 *et seq.* (Compl., Docket Entry No. 1.) On December 10, 2025, Plaintiff sought a certificate of default against Allwood, New York State Department of Taxation and Finance, New York City Environmental Control Board, New York

City Parking Violations Bureau, and New York City Transit Adjudication Bureau.  (Pl.'s Req. for Certif. of Default, Docket Entry No. 15.)  On December 16, 2025, the Clerk of Court entered default.  (Clerk's Certif. of Default, Docket Entry No. 16.)

On January 15, 2026, Plaintiff moved for default judgment against Defendants.[1]  (Pl.'s Mot.)  For the reasons set forth below, the Court grants in part and denies in part Plaintiff's motion for default judgment.

## I. Background

On November 14, 2006, Allwood, who was the borrower, executed a note to New Century Mortgage Corporation in the amount of $452,000 (the "Note").[2]  The same day, Allwood executed a mortgage on the Property for $452,000 plus interest to Mortgage Electronic Registration Systems, Inc., as nominee for New Century Mortgage Corporation ("Mortgage Electronic Registration Systems") (the "Mortgage").[3]  (Compl. ¶ 12; Robson Decl. ¶ 3; Mortgage and Loan Modification Agreements, annexed to Robson Decl. as Ex. C, Docket Entry No. 19-7 and to Compl. as Ex. D, Docket Entry No. 1-4.)  On November 28, 2006, the Kings County Clerk's office recorded the Mortgage.  (Compl. ¶ 12; Mortgage 2.)  The parties modified the loan in November of 2010, May of 2015, March of 2016, September of 2017, May of 2023, and April

---

[1]  Plaintiff did not seek a certificate of default against Defendants John Doe #1 through John Doe #12.  Instead, Plaintiff requests that the Court (1) dismiss the claims brought against John Doe #1 through John Doe #12, who were never served and (2) amend the caption to reflect the dismissal.  (Pl.'s Not. of Mot. for Default J. ("Pl.'s Mot.") 2, Docket Entry No. 19; Pl.'s Mem. in Supp. of Pl.'s Mot. ("Pl.'s Mem.") 8, appended to Pl.'s Mot., Docket Entry No. 19-3.)

[2]  (Compl. ¶ 12; Decl. of Corey Robson, Esq. in Supp. of Pl.'s Mot. ("Robson Decl.") ¶ 2, appended to Pl.'s Mot., Docket Entry No. 19-2; Note 1, annexed to Robson Decl. as Ex. B, Docket Entry No. 19-6 and to Compl. as Ex. C, Docket Entry No. 1-3.)

[3]  Because the exhibits annexed by Plaintiff are not internally paginated, the Court refers to the portable document format ("PDF") page numbers.

of 2024 (the "April 2024 Loan Modification Agreement").[4]  The April 2024 Loan Modification

Agreement provides that the loan's principal balance was \$437,748.36, consisting of a deferred

principal balance and an interest-bearing principal balance, with a 2.00% annual interest rate

applied to the interest-bearing portion.[5]  (April 2024 Loan Modification Agreement 1–8.)

On December 1, 2009, Mortgage Electronic Registration Systems assigned the Mortgage

to Deutsche Bank National Trust Company, as trustee for Morgan Stanley ABS Capital I Inc.

Trust 2007-NC2 ("Deutsche Bank").  (Compl. ¶ 12(b); Assignment of Mortgage 3–5, annexed to

Compl. as Ex. E, Docket Entry No. 1-5; Robson Decl. ¶ 10; *see also* Assignments of Mortgage

2–4, annexed to Robson Decl. as Ex. D, Docket Entry No. 19-8.)  On January 27, 2010, the

Office of the City Register recorded the assignment of the Mortgage to Deutsche Bank.  (Compl.

¶ 12(b); Assignment of Mortgage 3; Robson Decl. ¶ 10.)  On September 5, 2025, Deutsche Bank

assigned the Mortgage to Plaintiff.  (Compl. ¶ 12(b); Assignment of Mortgage 6–10; Robson

Decl. ¶ 10; *see* Compl. ¶ 20.)  On September 19, 2025, the Office of the City Register recorded

---

[4]  (Compl. ¶¶ 13–18; Robson Decl. ¶¶ 4–9; Affirmation of Indebtedness of Claribel
Lopez ("Lopez Aff.") ¶¶ 7–12, appended to Pl.'s Mot., Docket Entry No. 19-4; Loan
Modification Agreements, annexed to Compl. as Ex. F, Docket Entry No. 1-6; April 2024 Loan
Modification Agreement, appended in Loan Modification Agreements 41–51; *see* Mortgage and
Loan Modification Agreements.)
The Court notes that the Robson Declaration, the Lopez Affirmation, and Allwood's
signature and date on the April 2024 Loan Modification Agreement indicate that the loan
modification agreement was executed on April 19, 2025.  (Robson Decl. ¶ 9; Lopez Aff. ¶ 12;
April 2024 Loan Modification Agreement 9.)  However, the loan modification agreement
indicates that it was executed in 2024, not 2025, because: (1) it states that the "[m]odification
[a]greement [d]ate" as April 11, 2024, (April 2024 Loan Modification Agreement 2), and the
modification agreement date is referred throughout the document, (*see generally id.*); (2) it
provides a new interest rate of 2% beginning April 1, 2024, (*id.* at 3–4); and (3) Plaintiff's
signature on the acknowledgement is dated May 15, 2024, (*id.* at 10).

[5]  The agreement states that "[t]he [n]ew [p]rincipal [b]alance may represent the sum of
the '[d]eferred [p]rincipal [b]alance' (if applicable)."  (April 2024 Loan Modification Agreement
3.)  The deferred principal balance is an amount "treated as a non-interest bearing principal
forbearance."  (Loan Modification Agreements 6.)

3

the assignment of the Mortgage to Plaintiff.[6]  (Compl. ¶ 12(b); Assignment of Mortgage 7; Robson Decl. ¶ 10; *see* Compl. ¶ 20.)

Plaintiff contends first, that Allwood failed to make the "arranged payments" pursuant to the November of 2010, May of 2015, March of 2016, September of 2017, May of 2023, and April of 2024 loan modification agreements, which "resulted in default."  (Robson Decl. ¶¶ 4–9; Lopez Aff. ¶¶ 7–12.)  Second, Plaintiff contends that, on July 1, 2024, Allwood defaulted on the Note and Mortgage by failing to make the July 1, 2024 payment, and Allwood has not made any subsequent payments.  (Compl. ¶ 22; Lopez Aff. ¶ 13.)  On June 7, 2024, Plaintiff sent Allwood ninety-day notices addressed to the Property pursuant to RPAPL § 1304(1) (the "90-Day Notices").[7]  (Compl. ¶¶ 25–26 (stating that Plaintiff has complied with RPAPL §§ 1304 and 1306 by serving the 90-Day Notices); 90-Day Nots. and Proof of Filing Statement, annexed to Compl. as Ex. G, Docket Entry No. 1-7; Robson Decl. ¶ 13; 90-Day Nots., annexed to Robson Decl. as Ex. F, Docket Entry No. 19-10.)  On April 11, 2025, Plaintiff mailed a notice of default to Allwood addressed to the Property (the "Default Notice").  (Lopez Aff. ¶ 16; Default Not., annexed to Robson Decl. as Ex. E, Docket Entry No. 19-9.)  The Default Notice informed Allwood that she owed $21,548.40 in unpaid monthly payments, late charges, and other charges, and gave her until May 15, 2025 to pay $21,548.40.  (Default Not. 4.)  The Default Notice also informed Allwood that failure to cure the default "may require immediate payment in full, and

---

[6]  Prior to the September of 2025 assignment of the Mortgage to Plaintiff, Plaintiff acted as the Mortgage servicer.  (Lopez Aff. ¶ 3; Loan Modification Agreements 31–51 (stating that Plaintiff was the Mortgage servicer for the April of 2023 and April of 2024 loan modification agreements).)

[7]  The Court notes that Plaintiff sent the 90-Day Notices prior to the September of 2025 assignment of the Mortgage to Plaintiff because Plaintiff was the Mortgage servicer.  (Lopez Aff. ¶ 3; Loan Modification Agreements 31–51.)

lender or another person may acquire the Property by means of foreclosure and sale" and "[u]pon acceleration, the total obligation will be immediately due and payable without further demand." (*Id.*)  Allwood has not cured the default.  (Compl. ¶¶ 22, 27; Lopez Aff. ¶ 13; *see* Robson Decl. ¶ 12.)

## II.  Discussion

### a.  Standard of review

Pursuant to Rule 55 of the Federal Rules of Civil Procedure there is "a 'two-step process' for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)); *see Am. Transit Ins. Co. v. Pierre*, No. 24-CV-360, 2025 WL 863865, at *2 (E.D.N.Y. Mar. 19, 2025) (explaining that there is a "'two-step process' for the entry of judgment against a party who fails to defend" (quoting *Mickalis Pawn Shop*, 645 F.3d at 128)).  "[T]he court may, on [the] plaintiffs' motion, enter a default judgment if liability is established as a matter of law when the factual allegations of the complaint are taken as true." *Bricklayers & Allied Craftworkers Loc. 2 v. Moulton Masonry & Constr., LLC*, 779 F.3d 182, 187 (2d Cir. 2015) (per curiam) (citing *Mickalis Pawn Shop*, 645 F.3d at 137); *U.S. Bank Nat'l Ass'n v. Joeefi LLC*, No. 24-CV-3966, 2025 WL 1042416, at *1 (S.D.N.Y. Apr. 8, 2025) (quoting *id.*); *see also Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (explaining that a district court deciding a motion for default judgment "is required to accept all of the [plaintiff's] factual allegations as true and draw all reasonable inferences in its favor" (citing *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981))); *Trs. of the Pavers & Rd. Builders Dist. Council Welfare, Pension, & Annuity Funds v. Toros Bros. Constr. Corp.*, No. 24-CV-6634, 2025 WL 3265230, at *3 (E.D.N.Y. Nov. 24, 2025) ("When evaluating a plaintiff's application for a default judgment, 'a

5

court is required to accept all [ ] factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor.'" (alterations in original) (quoting *Romanowicz*, 577 F.3d at 84)). "A default . . . only establishes a defendant's liability if those allegations are sufficient to state a cause of action against the defendant." *Taizhou Zhongneng Imp. & Exp. Co. v. Koutsobinas*, 509 F. App'x 54, 56 (2d Cir. 2013); *see Tene v. Neuehaus Studios Inc.*, No. 23-CV-2040, 2025 WL 2731755, at *2 (E.D.N.Y. Sep. 25, 2025) (applying the Rule 55 standard and holding that default establishes liability only where the complaint's well-pleaded allegations state a valid cause of action), *report and recommendation adopted*, Order adopting Report and Recommendations (E.D.N.Y. Oct. 10, 2025). However, because there is "'a strong preference for resolving disputes on the merits,' and because 'a default judgment is the most severe sanction which the court may apply,' . . . a district court's discretion in [granting default judgment is] 'circumscribed,'" *Mickalis Pawn Shop*, 645 F.3d at 129 (first quoting *Green*, 420 F.3d at 104; then quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); and then citing *State St. Bank & Tr. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 168 (2d Cir. 2004)), and "all doubts must be resolved in favor of the [defaulting] party," *Green*, 420 F.3d at 104 (citing *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)). *See Hellman v. Cortland Realty Invs. LLC*, No. 22-CV-8341, 2025 WL 415388, at *2 (S.D.N.Y. Feb. 6, 2025) ("In the Second Circuit, there is a strong 'preference for resolving disputes on the merits.'" (first quoting *Enron Oil Corp.*, 10 F.3d at 95; and then citing *Johnson v. N.Y. Univ.*, 800 F. App'x 18, 19–20 (2d Cir. 2020))).

"The entry of a default, while establishing liability, 'is not an admission of damages.'" *Mickalis Pawn Shop*, 645 F.3d at 128 (quoting *Romanowicz*, 577 F.3d at 83 n.6). "There must be an evidentiary basis for the damages sought by plaintiff, and a district court may determine there is sufficient evidence either based upon evidence presented at a hearing or upon a review of

6

detailed affidavits and documentary evidence." *Cement & Concrete Workers Dist. Council Welfare Fund v. Metro Found. Contractors, Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) (first citing Fed. R. Civ. P. 55(b)(2); and then citing *Fustok v. ContiCommodity Servs., Inc.*, 873 F.2d 38, 40 (2d Cir. 1989)); *Sheet Metal Workers Loc. Union No. 46 Health Fund by Milne v. T.J.V. Mech. LLC*, No. 24-CV-6281, 2025 WL 825308, at *7 (W.D.N.Y. Mar. 17, 2025) (quoting *Cement & Concrete*, 699 F.3d at 234); *Godinger Silver Art Ltd. v. Amazon Storefront HODSOF US*, No. 23-CV-7087, 2024 WL 4145724, at *2 (E.D.N.Y. Sep. 11, 2024) (quoting same).

### b.  Plaintiff has complied with all procedural and statutory requirements

Plaintiff has complied with applicable procedural and statutory requirements, including the Servicemembers Civil Relief Act, 50 U.S.C. § 3931, and the notice and service provisions set forth in Article 13 of the RPAPL.[8]  *See Aviation Hagglers Int'l DWC-LLC v. UTD. Aviation Sols. LLC*, No. 24-CV-6610, 2025 WL 3451979, at *3 (E.D.N.Y. Nov. 12, 2025) ("The [c]ourt must therefore ensure [ ] [the p]laintiff satisfied all the required procedural steps in moving for default judgment . . . ."), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Jan. 2, 2026); *Com. Lender LLC v. 413 Greene Realty 2014 Corp.*, No. 22-CV-2910, 2023 WL 7000877, at *3 (E.D.N.Y. Sep. 7, 2023) ("[T]he [c]ourt must ensure that [ ] [the p]laintiff took all the required procedural steps in moving for default judgment pursuant to Local Civ. R. 55.2(c) . . . ."), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Sep. 27, 2023).

---

[8]  In addition, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties and the amount in controversy exceeds $75,000.  (*See* Compl. ¶¶ 2–10.)  *See Vera v. Banco Bilbao Vizcaya Argentaria, S.A.*, 946 F.3d 120, 135 (2d Cir. 2019) ("[E]ven if no party raises the issue, courts have an obligation to consider subject matter jurisdiction *sua sponte*.").

### i.   Plaintiff has complied with the Servicemembers Civil Relief Act

The Servicemembers Civil Relief Act, 50 U.S.C. § 3931, provides in pertinent part that before entering default judgment in favor of the plaintiff, courts must "require the plaintiff to file . . . an affidavit . . . stating whether or not the defendant is in military service and showing necessary facts to support the affidavit." 50 U.S.C. § 3931(b)(1)(A); *see Aviation Hagglers Int'l*, 2025 WL 3451979, at *3 (explaining that the Servicemembers Civil Relief Act "require[s] the plaintiff [seeking a default judgment] to file with the court an affidavit . . . stating whether or not the defendant is in military service" (third alteration in original) (quoting 50 U.S.C. § 3931)); *Wilmington Sav. Fund Soc'y, FSB v. Fernandez*, 712 F. Supp. 3d 324, 332 (E.D.N.Y. 2024) (same). The Servicemembers Civil Relief Act applies only to individual defendants. *See Bonilla v. Avery Cuisine LLC*, No. 23-CV-8320, 2025 WL 745906, at *3 (E.D.N.Y. Jan. 15, 2025) ("The [Servicemembers Civil Relief Act] requirement is inapplicable where . . . the sole defaulting defendant is a corporation, rather than an individual."), *report and recommendation adopted*, 2025 WL 559650 (E.D.N.Y. Feb. 20, 2025). Accordingly, in this action, the requirement applies to Allwood.

Plaintiff has complied with the Servicemembers Civil Relief Act. On January 15, 2026, Plaintiff filed an affirmation stating that Allwood "is not active in the military." (Robson Decl. ¶ 17.) Plaintiff also produced a report from the Department of Defense demonstrating that Allwood is not in military service. (Status Report Pursuant to Servicemembers Civil Relief Act, annexed to Robson Decl. as Ex. G, Docket Entry 19-11.) Plaintiff has therefore established compliance with the Servicemembers Civil Relief Act. *See Weber Cap. LLC v. Racaniello*, --- F. Supp. 3d. ---, ---, 2026 WL 522339, at *15 (E.D.N.Y. Feb. 25, 2026) (concluding that the plaintiff complied with the Servicemembers Civil Relief Act by filing an affidavit stating that the defendant "is not in the military service or any branch thereof" and a "a printout from the

8

Department of Defense Manpower Data Center — an entity that hosts the [Servicemembers Civil Relief Act] verification website — showing no results for [the d]efendant"); *Fernandez*, 712 F. Supp. 3d at 333 (E.D.N.Y. 2024) ("Adequate proof [of compliance with the statute] might consist of a report from the Department of Defense's website obtained after the defendant's default certifying that the defendant is not in active military service." (citing *ADI Glob. Distrib. v. Green*, No. 20-CV-3869, 2023 WL 3355049, at *3 (E.D.N.Y. Apr. 24, 2023), *report and recommendation adopted*, 2023 WL 3346499 (E.D.N.Y. May 10, 2023))); *Green*, 2023 WL 3355049, at *3 (concluding that the plaintiff complied with the Servicemembers Civil Relief Act by providing "a declaration from . . . counsel stating that [the plaintiff] has searched the Department of Defense's website and obtained a Status Report pursuant to the Servicemembers Civil Relief Act").

### ii.    Plaintiff has complied with RPAPL's requirements

"To prevail in a mortgage foreclosure action under New York law, the plaintiff must satisfy the common law elements and the statutory requirements set forth in Article 13 of the [RPAPL]." *See Freedom Mortg. Corp. v. Petriello*, No. 22-CV-7310, 2025 WL 1726320, at *8 (E.D.N.Y. June 20, 2025) (alteration in original) (quoting *Fernandez*, 712 F. Supp. 3d at 332; *OneWest Bank, N.A. v. Conklin*, 310 F.R.D. 40, 44 (N.D.N.Y. 2015) (explaining that "mortgage foreclosure actions are governed by Article 13 of the [RPAPL]" in addition to the common law elements).

Article 13 requires the plaintiff in a residential foreclosure action to first serve a specific notice on the defendants along with the summons and complaint, *see* RPAPL § 1303; *Petriello*, 2025 WL 1726320, at *8 ("RPAPL § 1303 requires a plaintiff to serve on [the] defendants a notice containing specific language along with the summons and complaint.  The notice must 'be in bold, fourteen-point type' have its title 'in bold, twenty-point type,' 'be on its own page,' and

'be printed on colored paper that is other than the color of the summons and complaint.'"
(quoting RPAPL § 1303(2))); *U.S. Bank Nat'l Ass'n v. 22-33 Brookhaven, Inc.*, 194 N.Y.S.3d
543, 551 (App. Div. 2023) ("Proper service of the notice required by RPAPL [§] 1303 is a
condition precedent to the commencement of a foreclosure action, and it is the plaintiff's burden
to show compliance with that statute." (quoting *U.S. Bank Nat'l Ass'n v. Ahmed*, 106 N.Y.S.3d
78, 82 (App. Div. 2019))).

Second, Article 13 requires the plaintiff to serve a specific notice at least ninety days
before commencing the foreclosure action, *see* RPAPL § 1304; *CIT Bank N.A. v. Donovan*, 856
F. App'x 335, 338 (2d Cir. 2021) ("Proper service of RPAPL [§] 1304 notice on the . . .
borrowers is a condition precedent to the commencement of a foreclosure action." (quoting
*Deutsche Bank Nat'l Tr. Co. v. Spanos*, 961 N.Y.S.2d 200, 202 (App. Div. 2013))).

Third, Article 13 requires the plaintiff to file certain information with the Superintendent
of the New York State Department of Financial Services within three business days of mailing
the ninety-day notice required by RPAPL § 1304, *see* RPAPL § 1306; *CIT Bank N.A. v.
Schiffman*, 999 F.3d 113, 117 (2d Cir. 2021) (stating that RPAPL § 1306 requires "a foreclosure
plaintiff [must] file certain information, within three business days of mailing a § 1304 notice,
with a state regulator, the Superintendent of Financial Services," and the filing must include,
among other information, "the name, address, last known telephone number of the borrower, and
the amount claimed as due and owing on the mortgage" (quoting RPAPL § 1306)); *CIT Bank
N.A. v. Schiffman*, 948 F.3d 529, 535 (2d Cir. 2020) ("Section 1306(1) provides as a precondition
of a foreclosure action that a plaintiff must file 'the information required by [§ 1306(2)]' within
three business days of mailing a § 1304 notice." (alteration in original) (quoting RPAPL §
1306(1))).

Fourth, Article 13 requires the plaintiff to serve a special summons once the foreclosure action has been filed, *see* RPAPL § 1320; *Petriello*, 2025 WL 1726320, at *8 ("RPAPL § 1320 requires that the summons, '[i]n an action to foreclose a mortgage on a residential property containing not more than three units[,]' contain specific language in boldface." (first alteration in original) (quoting RPAPL § 1320)).

Fifth, Article 13 requires the plaintiff to file a notice of pendency of the action in the clerk's office in the county where the subject property is located, *see* RPAPL § 1331; *Windward Bora, LLC v. Sotomayor*, No. 21-CV-7161, 2023 WL 2575582, at *6 (S.D.N.Y. Mar. 20, 2023) (stating that RPAPL § 1331 requires that the plaintiff, "at least twenty days before a final judgment directing a sale is rendered," must "file in the clerk's office of each county where the mortgaged property is situated a notice of the pendency of the action" specifying, among other requirements, "the date of the mortgage, the parties thereto[,] and the time and place of recording" (quoting RPAPL § 1331)), *aff'd*, 113 F.4th 236 (2d Cir. 2024); *U.S. Bank Tr., N.A. v. Green-Stevenson*, 174 N.Y.S.3d 124, 126 (App. Div. 2022) ("RPAPL [§] 1331 provides . . . that at least [twenty] days before a final judgment directing a sale in a mortgage foreclosure action, the plaintiff must file 'a notice of the pendency of the action.'" (quoting *Nationwide Mortg. LLC v. Dessingue*, 63 N.Y.S.3d 612, 614 (App. Div. 2017))).

Plaintiff has complied with each of the statutory requirements. First, Plaintiff complied with RPAPL § 1303 by attaching a notice to the summons and Complaint with the required language and formatting, as specified by the statute. (RPAPL § 1303 Not., annexed to Compl. as Ex. 10, Docket Entry No. 1-10.) The RPAPL § 1303 Notice is in bold, fourteen-point type, the title is in bold, twenty-point type, is on its own page, and is printed on yellow colored paper, while the summons and Complaint are blue. (Aff. of Service, Docket Entry No. 9; *see* RPAPL §

11

1303 Not.)  Plaintiff also submitted an affidavit of service from the process server who attested to serving the summons, the Complaint, and "notice requirements in accordance with RPAPL[]§[]1320" upon a person of suitable age and discretion, a "family member," at the Property.  (Aff. of Service; *see* Aff. of Mailing, annexed to Aff. of Service, Docket Entry No. 9-1.)  *See Petriello*, 2025 WL 1726320, at *10 (finding that the plaintiff had complied with the requirements of RPAPL § 1303 because the plaintiff attached the notice to the summons and complaint, the process server attested "that he served on both [b]orrowers the [c]omplaint, [s]ummons, and the 'Homeowner's Foreclosure Notice as required by RPAPL § 1303,'" which met the formatting requirements); *Fernandez*, 712 F. Supp. 3d at 334 (stating that the plaintiff complied with RPAPL § 1303 because "[the plaintiff's] process server stated that he served the notice required by [§] 1303 with the [s]ummons and [c]omplaint, and the notice attached to the affidavit complie[d] with the formatting requirements . . . and contain[ed] the content required").

Second, Plaintiff complied with RPAPL § 1304 by mailing, on June 7, 2024, via certified and first-class mail, the 90-Day Notices to Allwood at the Property.  (90-Day Nots. and Proof of Filing Statement; Robson Decl. ¶ 13; *see also* Lopez Aff. ¶¶ 17–19 (describing Plaintiff's "practice for generating and mailing [90-Day Notices]").)  The 90-Day Notices contained the required language in at least fourteen-point type and specified that the loan was thirty-six days and $4,309.28 in default.  (90-Day Nots. and Proof of Filing Statement.)  In addition, Plaintiff included an affidavit from Claribel Lopez, Plaintiff's Contract Management Coordinator, affirming the notices "contained the statutorily prescribed language and the addresses and phone numbers of at least five approved housing counseling agencies in the region where [Allwood] resides.  Each notice was mailed in its own separate envelope."  (Lopez Aff. ¶¶ 1, 17, 19.)  Plaintiff also complied with RPAPL § 1304 because it mailed the 90-Day Notices more than

12

ninety days in advance of commencing this action, as the 90-Day Notices were mailed on June 7, 2024, and this action was filed on October 8, 2025. *See United States v. Olstrom*, No. 19-CV-5878, 2024 WL 1348651, at *7 (E.D.N.Y. Mar. 29, 2024) (concluding there is no genuine dispute that the plaintiff complied with RPAPL § 1304 because the "plaintiff submitted the [ninety]-day notice it sent to [the defendant]" and the notice included the required statutory language).

Third, Plaintiff complied with RPAPL § 1306 by making the required filing with the Superintended of Financial Services on June 10, 2024. (90-Day Nots. and Proof of Filing Statement; *see* Lopez Aff. ¶ 20.) The Proof of Filing Statement includes the required names, address, last known number, and the amount of the original loan. (90-Day Nots. and Proof of Filing Statement.) *See W. Coast 2014-7, LLC v. Chandipersaud*, No. 21-CV-4314, 2022 WL 4586116, at *4 (E.D.N.Y. July 1, 2022) (finding that New York State Department of Financial Services proof of filing statements "demonstrated [the plaintiff's] compliance with RPAPL § 1306"), *report and recommendation adopted*, 2022 WL 4586357 (E.D.N.Y. Sep. 29, 2022).

Fourth, Plaintiff complied with RPAPL § 1320 by serving on Allwood a special summons with the required language and formatting, as specified by the statute. (RPAPL § 1320 Not., annexed to Compl., Docket Entry No. 1-9.) The process server affirmed that they had served the "additional notice requirements" pursuant to RPAPL § 1320. (Aff. of Service.)

Fifth, Plaintiff complied with RPAPL § 1331 by providing proof that it filed the notice of pendency with the clerk's office at least twenty days before a final judgment directing a sale was filed, which was entered by the Kings County Clerk's office on December 4, 2025. (Not. of Pendency of Action, annexed to Robson Decl. as Ex. I, Docket Entry No. 19-13; Robson Decl. ¶ 15.)

### c. Plaintiff is entitled to a judgment of foreclosure and sale against Allwood

Plaintiff argues that it has established a *prima facie* entitlement to judgment by submitting the Note, Mortgage, and a supporting affidavit evidencing Allwood's failure to make mortgage payments as contractually required. (Pl.'s Mem. 9–11.) In addition, Plaintiff seeks the appointment of a referee to sell the Property in accordance with the judgment of foreclosure and sale. (Proposed J. of Foreclosure and Sale 2, appended to Pl.'s Mot., Docket Entry No. 19-1; Robson Decl. ¶ 26.)

"In a mortgage foreclosure action under New York law, a lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that debt." *U.S. Bank, N.A. v. Squadron VCD, LLC*, 504 F. App'x 30, 32 (2d Cir. 2012) (first citing *R.B. Ventures, Ltd. v. Shane*, 112 F.3d 54, 59 n.2 (2d Cir. 1997); and then citing *United States v. Freidus*, 769 F. Supp. 1266, 1277 (S.D.N.Y. 1991)); *Windward Bora LLC v. Durkovic*, No. 22-CV-411, 2024 WL 3455841, at *5 (E.D.N.Y. July 18, 2024) (quoting *id.*); *Windward Bora LLC v. Zinnar*, No. 19-CV-4533, 2023 WL 9001537, at *4 (E.D.N.Y. Dec. 28, 2023) (quoting same); *see Axos Bank v. Ottomanelli*, No. 23-CV-941, 2023 WL 8567503, at *2 (E.D.N.Y. Dec. 11, 2023) ("Under New York law, 'the plaintiff in an action to foreclose a mortgage [must] demonstrate: the existence of the mortgage and mortgage note, ownership of the mortgage, and the defendant's default in payment.'" (alteration in original) (quoting *Gustavia Home, LLC v. Bent*, 321 F. Supp. 3d 409, 414 (E.D.N.Y. 2018))). When the plaintiff has established a *prima facie* case of foreclosure and sale, courts have appointed a referee to conduct the sale of the property. *See, e.g., Freedom Mortg. Corp. v. McLain*, No. 23-CV-1309, 2023 WL 8473948, at *3 (E.D.N.Y. Oct. 12, 2023) ("The appointment of a referee should be allowed where the plaintiff has 'established a *prima facie* case[.]'" (alteration in original) (quoting *E. Sav. Bank, FSB v. Evancie*, No. 13-CV-878, 2014 WL 1515643, at *4 (E.D.N.Y. Apr. 18, 2014))), *report and recommendation adopted*, 2023

14

WL 7320257 (E.D.N.Y. Nov. 7, 2023); *see also Windward Bora, LLC v. Brito*, No. 19-CV-4073, 2020 WL 7296859, at *2 (E.D.N.Y. Dec. 11, 2020) (appointing a referee); *Avail 1 LLC v. Latief*, No. 17-CV-5841, 2020 WL 5633099, at *1 n.1 (E.D.N.Y. Sep. 21, 2020) (directing the plaintiff to submit three proposed referees); *PMB Tech. Servs., LLC v. Mazoureix*, No. 14-CV-4834, 2015 WL 5664823, at *1 (E.D.N.Y. Sep. 23, 2015) (directing the appointment of a referee).

Plaintiff has established that it is entitled to a judgment of foreclosure and sale. Plaintiff has produced a copy of the Note signed by Allwood and an affirmation stating that Plaintiff obtained physical possession of the original Note on December 19, 2018, and remained in possession of the Note through the commencement of this action. (Note; Lopez Aff. ¶ 5.) The Lopez Affirmation further states that the Note was endorsed by New Century Mortgage Corporation, and that the endorsement was firmly affixed to the Note prior to commencement. (Lopez Aff. ¶ 5; *see* Note 5.) In addition, Plaintiff has produced a copy of the Mortgage signed by Allwood and made out to New Century Mortgage Corporation, (Mortgage 2–18), as well as documents showing that the Mortgage was assigned to Deutsche Bank on December 1, 2009, and then assigned to Plaintiff on September 5, 2025, (Assignment of Mortgage 2–10).[9] The Note,

---

[9] The Court notes that while the Lopez Affirmation states that Plaintiff obtained physical possession of the original Note in December of 2018, (Lopez Aff. ¶ 5), Plaintiff was assigned the Mortgage in September of 2025, (Assignment of Mortgage 6). This does not impact the Court's ability to grant foreclosure because "New York courts have repeatedly held that proof of physical possession — such as the affidavits of [the plaintiff's] corporate representative . . . is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016). Thus, the Lopez Affirmation, submitted by Plaintiff's contract management coordinator, is sufficient to establish Plaintiff's standing for foreclosure purposes. *See Deutsche Bank Nat'l Tr. Co. v. Nickle*, No. 24-CV-7889, 2026 WL 788108, at *6 ("In addition to the allegations in the [c]omplaint, which have not been refuted, [the] plaintiff has submitted copies of the duly executed [n]ote and [m]ortgage, the [a]ssignment of [m]ortgage, and the [a]ffirmation of [i]ndebtedness, executed [by the plaintiff's] [c]ontract [m]anagement [c]oordinator, attesting to the authenticity of the documents and certifying compliance with the requirements of the RPAPL."), *report and recommendation adopted*, 2026 WL 788011 (E.D.N.Y. Mar. 20, 2026).

the Mortgage, and the accompanying assignment documents establish the existence of a debt owed by Allwood and Plaintiff's ownership of the Note and Mortgage. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 223 (2d Cir. 2016) ("New York courts have repeatedly held that proof of physical possession — such as the affidavits of [the plaintiff's] corporate representative and counsel in this case — is sufficient on its own to prove a plaintiff's standing to foreclose on the mortgage associated with the note."); *E. Sav. Bank, FSB v. Thompson*, 631 F. App'x 13, 15 (2d Cir. 2015) ("[E]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident." (quoting *U.S. Bank, N.A. v. Collymore*, 890 N.Y.S.2d 578, 580 (App. Div. 2009))); *Zinnar*, 2023 WL 9001537, at *5 (finding evidence that "PNC [Bank, N.A.], the successor by merger to [National City Bank], assigned the [m]ortgage to Keyhole" and that "Keyhole assigned the [m]ortage to [the p]laintiff," along with "[a]llonges affixed to the [n]ote," was sufficient to establish that the plaintiff owned the mortgage and note); *Wilmington Sav. Fund Soc'y, FSB v. White*, No. 17-CV-2288, 2022 WL 5432771, at *8 (E.D.N.Y. July 27, 2022) (finding that the plaintiff had "the right to enforce the . . . [m]ortgage" when it had "demonstrated possession of the [n]ote and accompanying [m]ortgage prior to the commencement of the instant action [and] ha[d] produced . . . all relevant assignment documents"), *report and recommendation adopted as modified*, 2022 WL 4235326 (E.D.N.Y. Sep. 14, 2022); *Gustavia Home*, 321 F. Supp. 3d at 415 (finding that "copies of the [m]ortgage, [n]ote, allonges, and chain of assignments" was "evidence . . . that establishes a prima facie case of entitlement to judgment"); *JPMorgan Chase Bank, N.A. v. Weinberger*, 37 N.Y.S.3d 286, 289 (App Div. 2016) ("There is simply no requirement that an entity in possession of a negotiable instrument that has been endorsed in blank must establish how it came into

16

possession of the instrument in order to be able to enforce it."); *HSBC Bank USA, N.A. v. Spitzer*, 18 N.Y.S.3d 67, 68 (App. Div. 2015) ("A plaintiff has standing in a mortgage foreclosure action where it is the holder or assignee of the underlying note at the time the action is commenced.").

Plaintiff has also established Allwood's default.  Plaintiff alleges that Allwood defaulted by failing to make the monthly payment due on July 1, 2024 and has failed to make all subsequent payments.  (Compl. ¶¶ 22, 27.)  In an affidavit submitted by its authorized signatory, Claribel Lopez, Lopez states that she has "personal knowledge of [Plaintiff]'s business records," the records for the subject loan "have been incorporated into [Plaintiff]'s records," and that Allwood "failed to make the payment pursuant to the terms of the Note and Mortgage commencing with the July 1, 2024 payment, which default remains uncured."  (Lopez Aff. ¶¶ 2–3, 13.)  *See Blue Castle (Cayman) Ltd. v. Giwa*, No. 23-CV-3181, 2026 WL 575457, at *3 (E.D.N.Y. Mar. 2, 2026) (concluding that an "affidavit of one of its authorized signatories . . . who has access to the relevant business records in this case and is 'fully familiar with [the plaintiff's] record-keeping practices'" is sufficient for a *prima facie* case of default); *Axos Bank*, 2023 WL 8567503, at *2 (noting that declaration submitted in support of default motion "confirm[ed] that the [b]orrower defaulted on his obligations under the [l]oan [d]ocuments by failing to make required payments as they came due"); *U.S. Bank Nat'l Ass'n v. Whittle*,  No. 22-CV-5484, 2023 WL 8189938, at *3 (E.D.N.Y. Nov. 27, 2023) ("[The p]laintiff submitted evidence of [b]orrower's default in the form of an affidavit . . . which states that [the b]orrower defaulted on the [a]greements on September 1, 2021."); *Gustavia Home*, 321 F. Supp. 3d at 415 (concluding that an affidavit containing the statement that, based on the affiant's "own knowledge and from reviewing [the p]laintiff's business records . . . that defendant failed to cure the default" was sufficient evidence to establish the borrowers' default (internal quotation marks

and citations omitted)).

Accordingly, Plaintiff has established that it is entitled to a judgment of foreclosure and sale against Allwood. *See Squadron*, 504 F. App'x at 32 ("In a mortgage foreclosure action under New York law, a lender must prove (1) the existence of a debt, (2) secured by a mortgage, and (3) a default on that debt.").

> **d. Plaintiff is entitled to default judgment against non-mortgagor New York State Department of Taxation and Finance but not New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau**

The Court also enters a default judgment against New York State Department of Taxation and Finance, but not New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau. Although these Defendants were properly served, they have not answered or otherwise responded to the Complaint. First, Plaintiff alleges that New York State Department of Taxation and Finance "is the holder of a subordinate lien." (Compl. ¶ 4; *see also* Lien, annexed to Compl. as Ex. B, Docket Entry No. 1-2 (stating that New York State Department of Taxation and Finance is a "creditor").) Second, Plaintiff alleges that New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau are necessary parties "by virtue of liens docketed in the county clerk's office," and that they "may have an interest in the [P]roperty being foreclosed." (Compl. ¶¶ 5–7.)

"Every person having any lien or incumbrance upon the real property which is claimed to be subject and subordinate to the lien of the plaintiff" is a party defendant to a foreclosure action. RPAPL § 1311(3). Default judgment against non-mortgagor defendants may be appropriate where the complaint alleges nominal liability. *See Fed. Nat'l Mortg. Ass'n v. 1488 Bushwick, LLC*, No. 23-CV-4030, 2025 WL 4229057, at *4 (E.D.N.Y. Dec. 3, 2025) ("In the case of a non-

18

mortgagor defendant, entry of default judgment may be appropriate where 'the complaint alleges nominal liability, *i.e.*, that any judgments or liens a defendant may have against the property are subject and subordinate to plaintiff's lien.'" (quoting *U.S. Bank Nat'l Ass'n v. Harilal*, No. 19-CV-7034, 2022 WL 16754569, at *5 (E.D.N.Y. Aug. 30, 2022), *report and recommendation adopted*, 2022 WL 4596734 (E.D.N.Y. Sep. 30, 2022))); *Zinnar*, 2023 WL 9001537, at *5–6 (granting default judgment against "nominal defendants," which were "defendants against whom no relief is sought," but were identified as "the owner of record" or "judgment creditors"); *Windward Bora LLC v. Ingber*, No. 21-CV-3308, 2023 WL 6385815, at *4 (E.D.N.Y. Sep. 29, 2023) (finding that the plaintiff "sufficiently established that [a nominal defendant was] a non-mortgagor [d]efendant with nominal liability" where the complaint "contain[ed] well-pleaded allegations of nominal liability" and the plaintiff submitted "a judgment against [the borrower defendant] in favor of [the nominal defendant]"); *Golden Bridge LLC v. Queensway Builders LLC*, No. 22-CV-3551, 2023 WL 5533352, at *8 (E.D.N.Y. Aug. 10, 2023) (recommending that the district court grant default judgment against nine nominal defendants where the complaint alleged that they "ha[d], or claimed to have or may claim to have, some interest in or lien upon the [subject property]" that was subordinate to the plaintiff's interest), *report and recommendation adopted*, 2023 WL 5533494 (E.D.N.Y. Aug. 28, 2023).

New York law imposes a heightened pleading standard for actions against a city agency. *See 1488 Bushwick, LLC*, 2025 WL 4229057, at *4 ("Courts apply a heightened pleading standard for municipal defendants . . . to determine whether [the p]laintiff has established nominal liability."); *ARCPE Holding, LLC v. 9Q4U5E LLC*, No. 19-CV-6417, 2021 WL 8316275, at *4 (E.D.N.Y. Aug. 11, 2021) ("In an action against a government creditor like the [New York City Environmental Control Board], a plaintiff is subject to a heightened pleading

19

requirement to establish liability."). The complaint must provide "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant." RPAPL § 202-a(1). If the lien exists due to a judgment, the complaint must include "the name of the court, date recorded, clerk's office in which filed, the names of the parties against whom and in whose favor such judgment was recovered and a brief description of the grounds for or the nature of such judgment." *Id.* § 202-a(2).

Plaintiff's allegations are sufficient to establish that Plaintiff is entitled to the entry of default judgment as to New York State Department of Taxation and Finance. Plaintiff satisfies the RPAPL § 202-a heightened pleading standard by alleging that New York State Department of Taxation and Finance "is the holder of a subordinate lien," (Compl. ¶ 4; *see* Lien). *See* RPAPL § 202-a(1) (stating that the complaint must show "[d]etailed facts showing the particular nature of the interest in or lien on the real property and the reason for making such city a party-defendant"); *1488 Bushwick, LLC*, 2025 WL 4229057, at *4 n.3 ("Documentary proof of the city's interest or lien is usually necessary and sufficient to satisfy the heightened standard for pleading nominal liability against city defendants."); *Wells Fargo Bank Nat'l Ass'n v. 366 Realty LLC*, No. 17-CV-3570, 2024 WL 4891739, at *10 (E.D.N.Y. Nov. 26, 2024) ("[A] plaintiff must substantiate their allegations with documentation, such as a title report."), *report and recommendation adopted*, 2025 WL 556036 (E.D.N.Y. Feb. 20, 2025).

However, Plaintiff's allegations are insufficient to establish that Plaintiff is entitled to the entry of default judgment as to New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau. Plaintiff fails to satisfy the RPAPL § 202-a heightened pleading standard because the Lien does not name these nominal Defendants. (*See* Lien 2.) Plaintiff's allegation that these nominal Defendants are

20

necessary parties "by virtue of liens docketed in the county clerk's office" because they "may have an interest in the property being foreclosed," (Compl. ¶¶ 5–7), are conclusory and fail to identify any specific lien or provide sufficient detail regarding the nature of the purported interests required under RPAPL § 202-a. *See 1488 Bushwick, LLC*, 2025 WL 4229057, at *4 n.3 ("Documentary proof of the city's interest or lien is usually necessary and sufficient to satisfy the heightened standard for pleading nominal liability against city defendants."); *366 Realty LLC*, 2024 WL 4891739, at *10 ("[A] plaintiff must substantiate their allegations with documentation, such as a title report.").

Accordingly, the Court enters a default judgment against New York State Department of Taxation and Finance, but not New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau. *See Gustavia Home, LLC v. Derby*, No. 16-CV-4260, 2018 WL 4956719, at *5 (E.D.N.Y. Aug. 31, 2018) (denying default judgment against non-mortgagor city agency where allegation identified only a violation number but did not indicate whether it resulted in a lien or judgment, or provide filing details), *report and recommendation adopted*, 2018 WL 4954110 (E.D.N.Y. Oct. 12, 2018); *JXB 84 LLC v. Khalil*, No. 15-CV-6251, 2017 WL 1184001, at *4–5 (E.D.N.Y. Feb. 17, 2017) (granting default judgment against a city agency where the plaintiff included documentation identifying the liens, and recommending that the motion for default judgment be denied and the claim dismissed against a different city agency, where the plaintiff failed to support its assertion that the defendant may have an interest in or lien upon the subject property), *report and recommendation adopted*, 2017 WL 1184141 (E.D.N.Y. Mar. 29, 2017). Denial of default judgment as to these nominal Defendants does not affect Plaintiff's rights against Allwood or New York State Department of Taxation and Finance. *See Gustavia Home, LLC v. Derby*, 2018

21

WL 4956719, at *5 (citing *Glass v. Est. of Gold*, 853 N.Y.S.2d 159, 160 (App. Div. 2008));

*Glass*, 853 N.Y.S.2d at 160 ("The absence of a necessary party in a mortgage foreclosure action

simply leaves that party's rights unaffected by the judgment of foreclosure and sale.").

### e.    Damages

Plaintiff contends that it is owed $463,482.23, consisting of an unpaid principal balance

of $436,555.31, accrued interest of $12,287.31 as of October 28, 2025, late charges of $159,

escrow advances of $13,833.26, and additional costs of $742.50, less a "suspense balance" of

$95.15.[10]  (Lopez Aff. ¶ 21; *see* Robson Decl. ¶ 19.)  In support of its claim for damages,

Plaintiff submits the Lopez Affirmation and a ledger outlining the amounts owed.  (Lopez Aff. ¶

19; Data Compilations and Account Ledgers, annexed to Robson Decl. as Ex. P, Docket Entry

No. 19-20.)  Plaintiff contends that the Lopez Affirmation is "sufficient to demonstrate an

entitlement to damages." (Pl.'s Mem. 11–12.)

The Court finds that an evidentiary hearing is unnecessary and enters judgment in

Plaintiff's favor in the amount set forth below.  *See PHH Mortg. Corp. v. Khan*, No. 25-CV-

2925, 2026 WL 41169, at *3 (E.D.N.Y. Jan. 6, 2026) ("Rule 55(b)(2) does not mandate that a

district court hold a hearing, as judges have discretion to determine what is 'necessary and

proper.'" (quoting *McLean v. Wayside Outreach Dev., Inc.*, 624 F. App'x 44, 45 (2d Cir.

---

[10]  A "suspense balance" has been construed as a credit that reduces the foreclosure
judgment amount.  *See Nickle*, 2026 WL 788108, at *10 ("The [c]ourt notes that [the] plaintiff
subtracted $141.14 in [b]orrower's [s]urplus [b]alance and $271.38 in [s]uspense [b]alance from
its [a]mended [s]tatement of [d]amages, which the [c]ourt recommends should be subtracted
from the damages award."); *Wilmington Tr., Nat'l Ass'n v. 31 Prince St., LLC*, No. 22-CV-5855,
2025 WL 1528346, at *1 (S.D.N.Y. May 29, 2025) (subtracting a "[s]uspense [b]alance" of
$1,623,797.00 from the foreclosure judgment amount); *Windward Bora LLC v. Montour*, No. 23-
CV-3654, 2024 WL 4045989, at *6 (E.D.N.Y. Aug. 30, 2024) (recommending foreclosure
judgment amount, which included a "suspense balance on the property"), *report and
recommendation adopted*, 2024 WL 4242208 (E.D.N.Y. Sep. 19, 2024); *Wilmington Tr., Nat'l
Ass'n v. Winta Asset Mgmt. LLC*, No. 20-CV-5309, 2024 WL 2057238, at *1 (S.D.N.Y. May 6,
2024) (subtracting a "[s]uspense [b]alance" of $422.05 from the foreclosure judgment amount).

2015))); *Durkovic*, 2024 WL 3455841, at *3 (finding documentary evidence sufficient to establish damages without a hearing); *Fernandez*, 712 F. Supp. 3d at 330 ("The court may determine damages without an in-person hearing based on the plaintiff's affidavits so long as it can ensure a basis for the damages specified in the default judgment.").

### i. Outstanding principal

Plaintiff's request for entry of judgment for the unpaid principal balance of $436,555.31 is supported by the terms of the Mortgage, which provides that upon default, the loan holder may declare that Allwood "pay immediately the entire amount then remaining unpaid" and may collect "all costs and disbursements and additional allowances," including attorneys' fees. (Mortgage 17–18.) *See 1S Reo Opportunity 1, LLC v. Shepard Towers LLC*, No. 25-CV-1710, 2026 WL 678299, at *6 (E.D.N.Y. Feb. 23, 2026) (recommending awarding the plaintiff the unpaid principal balance because "[t]he [n]ote provides that in the event of the borrower's default, [the] plaintiff is entitled to the full amount of the outstanding principal of the loan"), *report and recommendation adopted*, 2026 WL 674678 (E.D.N.Y. Mar. 10, 2026); *McLain*, 2023 WL 8473948, at *5 (recommending awarding the plaintiff the unpaid principal balance because the note stated that "in the event of [the] defendant['s] [ ] default, [the] plaintiff may require immediate payment in full of all sums secured by the loan"). In addition, the Lopez Affirmation states that Allwood breached her payment obligation and defaulted upon the Note by "fail[ing] to make the payment pursuant to the terms of the Note and Mortgage commencing with the July []1, 2024 payment, which default remains uncured." (Lopez Aff. ¶ 13.) Plaintiff's summary of Allwood's account also reflects that, at the time of Allwood's default on July 1, 2024, the outstanding principal balance was $436,555.31. (Data Compilations and Account Ledgers 2 (reflecting a total principal balance of $436,555.31 as of October 28, 2025).) Based on the documentation submitted, the Court awards Plaintiff $436,555.31 in unpaid principal balance.

23

*See HSBC Bank USA, Nat'l Ass'n v. Fenelon*, No. 24-CV-7716, 2025 WL 3546115, at *8 (E.D.N.Y. Dec. 9, 2025) (concluding that an affidavit of indebtedness and "various data compilations, spreadsheets, and reports" showing "the [b]orrower's outstanding principal balance, deferred principal balance, note rate interest, late fees, escrow balance, and unpaid loan costs" was sufficient for the "[c]ourt to establish within a 'reasonable certainty' the total damages requested"); *Ingber*, 2023 WL 6385815, at *4–5 (awarding the plaintiff $63,527.39 in unpaid principal balance where the "[n]ote and [m]ortgage provide[d] that [the defendants] agreed to pay [the plaintiff] a principal sum of $69,000.00" and an affidavit submitted by the plaintiff established that, as of the date of default, "the unpaid principal under the [n]ote was $63,527.39"); *Harilal*, 2022 WL 16754569, at *7 (recommending an award of $309,592.09 in unpaid principal balance where the plaintiff "submitted documentation," including loan statements and sworn affidavits, which "assert[ed] that, at the time of [the borrower's] default . . . the [n]ote had an unpaid interest-bearing principal balance of $309,183.83, and an unpaid non-interest-bearing principal balance of $408.26").

### ii. Interest

Plaintiff seeks interest in the amount of $12,287.31, consisting of unpaid interest that accrued from June 1, 2024 to October 28, 2025, based on an interest rate of 2.00%, which is a "per diem or [Federal Housing Administration] Monthly Interest" rate of $23.92. (Lopez Aff. ¶ 21.)

The April 2024 Loan Modification Agreement between Plaintiff and Allwood establishes a yearly interest rate of 2.00%. (April 2024 Loan Modification Agreement 4.) The Court calculates a *per diem* interest rate of $23.92 by multiplying the interest rate (2.00% or 0.02) by the amount of unpaid principal balance ($436,555.31) and dividing that number by 365 days. The Court then multiplies the *per diem* interest rate of $23.92 by 515 days, the number of days

24

from June 1, 2024 to October 28, 2025, to arrive at a total unpaid interest of $12,318.80.

Accordingly, the Court awards Plaintiff a total of $12,318.80 in unpaid interest that accrued

between June 1, 2024 and October 28, 2025.  *See ARCPE Holding, LLC v. 9Q4U5E LLC*, No.

19-CV-6417, 2022 WL 2467085, at *3 (E.D.N.Y. Apr. 15, 2022) (applying a similar

methodology as the plaintiff to calculate unpaid interest on a variable rate loan and awarding the

amount calculated by the court).

### iii.  Post judgment interest

The Court also awards Plaintiff post-judgment interest at the statutory rate.  While

Plaintiff does not request that the Court award post-judgement interest, 28 U.S.C. § 1961

provides that "[t]he award of post-judgment interest is mandatory on awards in civil cases as of

the date judgment is entered."  *Tru-Art Sign Co. v. Local 137 Sheet Metal Workers Int'l Ass'n*,

852 F.3d 217, 223 (2d Cir. 2017) (alteration in original) (quoting *Lewis v. Whelan*, 99 F.3d 542,

545 (2d Cir. 1996)); *see Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) ("[The Second

Circuit has] consistently held that an award of postjudgment interest is mandatory.").

Accordingly, the Court awards Plaintiff post-judgment interest, which shall accrue at the federal

statutory rate from the entry of judgment until the judgment is paid in full.  28 U.S.C. § 1961(b)

("Interest shall be computed daily to the date of payment . . . ."); *see, e.g.*, *Wells Fargo Bank,*

*Nat'l Ass'n v. Ogola*, No. 24-CV-8667, 2026 WL 825456, at *8 (E.D.N.Y. Jan. 7, 2026)

(recommending awarding the plaintiff "post-judgment interest, which shall accrue at the federal

statutory rate from the entry of judgment until the judgment is paid in full"), *report and*

*recommendation adopted as modified*, 2026 WL 820683 (E.D.N.Y. Mar. 25, 2026); *Sec'y of U.S.*

*Dep't of Hous. & Urb. Dev. v. Rhodie*, No. 21-CV-3165, 2022 WL 3213048, at *5 (E.D.N.Y.

Aug. 9, 2022) ("[P]ost-judgment interest shall accrue at the federal statutory rate from the entry

of judgment until the judgment is paid in full."); *Sec'y of U.S. Dep't of Hous. & Urb. Dev. v.*

25

*Robedee*, No. 22-CV-809, 2022 WL 18284844, at *6 (E.D.N.Y. Dec. 5, 2022) (recommending awarding the plaintiff "post-judgment interest accruing at the federal statutory rate from entry of judgment until the judgment is paid in full"), *report and recommendation adopted*, 2022 WL 17850116 (E.D.N.Y. Dec. 22, 2022); *Freedom Mortg. Corp. v. Jett*, No. 18-CV-3306, 2019 WL 3714795, at *5 (E.D.N.Y. May 23, 2019) (recommending awarding post-judgment interest at the federal rate in action for judgment of foreclosure and sale), *report and recommendation adopted*, 2019 WL 3805103 (E.D.N.Y. Aug. 13, 2019).

### iv.    Late charges

Plaintiff seeks late charges totaling $159 in late fees.  (Lopez Aff. ¶ 21; Data Compilations and Account Ledgers 2.)  The Note specifies that Allwood will pay 2.00% of her overdue payment of principal and interest if payment is not received by "the end of fifteenth calendar days after the date it is due."  (Note 3.)

Plaintiff's submissions identify that Allwood incurred late charges totaling $159 from June 1, 2019 to October 28, 2025.  (Data Compilations and Account Ledgers 3–4 (reflecting net late charges of $159).)  Accordingly, the Court awards Plaintiff a total of $159 in late charges. *See Freedom Mortg. Corp. v. Abass*, No. 22-CV-5577, 2025 WL 875421, at *9 (E.D.N.Y. Mar. 3, 2025) (recommending awarding late payments when the plaintiff provided a declaration that listed the months late charges were accrued), *report and recommendation adopted*, 2025 WL 871661 (E.D.N.Y. Mar. 20, 2025).

### v.    Escrow advances

Plaintiff seeks to recover escrow advances totaling $13,833.26, including $10,440.01 in tax disbursements and $4,996 in insurance disbursements, minus $1,602.75 for "Escrow Payments/Credits."  (Lopez Aff. ¶ 21.)  In addition, Plaintiff seeks to recover additional costs of $742.50, including $240 in inspection fees for the Property, $85 for valuation fees of the

26

Property, and $417.50 in title search expenses.  (*Id.*)  The April 2024 Loan Modification Agreement provides that Allwood "promises to also pay any applicable monthly escrow payments as outlined in [the April 2024 Loan Modification Agreement]," which "may be adjusted periodically in accordance with applicable law due to changes in property taxes, insurance amounts or other escrow expenses."  (April 2024 Loan Modification Agreement 4.)

Plaintiff's submissions specify that Allwood incurred escrow advances totaling $13,833.26.  (*See* Data Compilations and Account Ledgers 2.)  Plaintiff provides Allwood's account history, with a breakdown of itemized charges and payments that make up the escrow balance, including those payments made by Plaintiff.  (*Id.* at 8–15.)  Accordingly, the Court awards Plaintiff a total of $13,833.26 in escrow advances.  In addition, Plaintiff's submissions identify that Allwood incurred additional costs totaling $742.50, including $240 in inspection fees for the Property, $85 in valuation fees of the Property, and $417.50 in title search expenses.  (Lopez Aff. ¶ 21; Data Compilations and Account Ledgers 6–7, 19–20.)  Plaintiff provides Allwood's advance history, with a breakdown of itemized charges and payments that make up the Property inspection fees, Property valuation fees, and title search expenses.  (Data Compilations and Account Ledgers 6–7, 19–20.)  Accordingly, the Court awards Plaintiff a total of $742.50 in additional costs.  In sum, because Plaintiff's submissions identify the escrow advances and the additional costs, the Court awards Plaintiff a total of $14,575.76.  *See ARCPE Holding, LLC*, 2022 WL 2467085, at *4 (recommending awarding damages when the plaintiff provided a "schedule detailing monthly escrow advances").

### f.    Attorneys' fees and costs

Plaintiff seeks attorneys' fees of $6,800 and costs of $1,070.  (Robson Decl. ¶ 20; Bill of Costs, annexed to Robson Decl. as Ex. M, Docket Entry No. 19-17; Aff. of Services Rendered, annexed to Robson Decl. as Ex. O, Docket Entry No. 19-19.)

27

Pursuant to 17 U.S.C. § 505, a court may "in its discretion . . . allow the recovery of full costs . . . [and] award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505; *Bryant v. Media Right Prods., Inc.*, 603 F.3d 135, 144 (2d Cir. 2010) (quoting *id.*). Trial courts are afforded "considerable discretion in determining what constitutes reasonable attorney's fees in a given case." *Holick v. Cellular Sales of N.Y., LLC*, 48 F.4th 101, 105 (2d Cir. 2022) (quoting *Barfield v. N.Y.C. Health & Hosps. Corp.*, 537 F.3d 132, 151 (2d Cir. 2008)); *see also Agudath Isr. of Am. v. Hochul*, No. 22-38, 2023 WL 2637344, at *1 (2d Cir. Mar. 27, 2023) (summary order) ("We have explained that 'we afford district courts broad discretion in awarding attorneys' fees because they are much closer to the details of each individual case and can better determine what is reasonable and appropriate in the fee calculus for the particular case.'" (quoting *Lilly v. City of New York*, 934 F.3d 222, 234 (2d Cir. 2019))); *Ortiz v. City of New York*, 843 F. App'x 355, 357–58 (2d Cir. 2021) (same); *Pettiford v. City of Yonkers*, 833 F. App'x 893, 895 (2d Cir. 2020) ("We afford a district court considerable discretion in determining what constitutes reasonable attorney's fees in a given case, mindful of the court's superior understanding of the litigation and the desirability of avoiding frequent appellate review of what essentially are factual matters." (quoting *Matusick v. Erie County Water Auth.*, 757 F.3d 31, 64 (2d Cir. 2014))). In exercising this discretion, trial courts must "bear in mind *all* of the case-specific variables that . . . courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate." *Lilly*, 934 F.3d at 232 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 190 (2d Cir. 2008)); *see Ortiz*, 843 F. App'x at 359 (same). "'[T]he most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff." *Barfield*, 537 F.3d at 152 (quoting *Farrar v. Hobby*, 506 U.S. 103, 114 (1992));

28

*Fisher v. SD Prot. Inc.*, 948 F.3d 593, 606–07 (2d Cir. 2020) (quoting same).  Courts look to

"[b]oth the quantity and quality of relief obtained, as compared to what the plaintiff sought to

achieve as evidenced in her complaint."  *Holick*, 48 F.4th at 106 (quoting *Barfield*, 537 F.3d at

152).  Other factors a court should consider include but are not limited to:

> the complexity and difficulty of the case, the available expertise and
> capacity of the client's other counsel (if any), the resources required
> to prosecute the case effectively (taking account of the resources
> being marshaled on the other side but not endorsing scorched earth
> tactics), the timing demands of the case, whether an attorney might
> have an interest (independent of that of his client) in achieving the
> ends of the litigation or might initiate the representation himself,
> whether an attorney might have initially acted *pro bono* (such that a
> client might be aware that the attorney expected low or non-existent
> remuneration), and other returns (such as reputation, etc.) that an
> attorney might expect from the representation.

*Arbor Hill*, 522 F.3d at 184; *see Lilly*, 934 F.3d at 230 (clarifying that district courts should

consider, among others, the factors laid out in *Johnson v. Georgia Highway Exp., Inc.*, 488 F.2d

714, 717–19 (5th Cir. 1974)); *Arbor Hill*, 522 F.3d at 190 (same).

Both the Second Circuit and the Supreme Court have held that "the lodestar [method] —

the product of a reasonable hourly rate and the reasonable number of hours required by the case

— creates a 'presumptively reasonable fee.'"  *Millea v. Metro-N. R.R. Co.*, 658 F.3d 154, 166

(2d Cir. 2011) (first quoting *Arbor Hill*, 522 F.3d at 183; and then citing *Perdue v. Kenny A. ex*

*rel. Winn*, 559 U.S. 542, 551–53 (2010)); *see SAC Fund II 0826, LLC v. N.Y.C. Dep't of Fin.*,

No. 23-7313, 2024 WL 5153943, at *2 (2d Cir. Dec. 18, 2024) (summary order) (citing *Millea*,

658 F.3d at 166); *Agudath*, 2023 WL 2637344, at *1 ("Courts award attorney's fees according to

the 'presumptively reasonable fee' (or 'lodestar') method, calculated as the product of the

reasonable number of hours worked and a reasonable hourly rate." (quoting *Arbor Hill*, 522 F.3d

at 183–84)); *Simmons v. New York City Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009) (stating

29

that attorneys' fees are awarded by calculating the "presumptively reasonable fee").  The fee applicant bears the burden of "submit[ting] adequate documentation supporting the requested attorneys' fees and costs." *Fisher*, 948 F.3d at 600 (first citing *N.Y. State Ass'n for Retarded Child., Inc. v. Carey*, 711 F.2d 1136, 1154 (2d Cir. 1983) ("All applications for attorney's fees . . . should normally be disallowed unless accompanied by contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done."); and then citing *McCann v. Coughlin*, 698 F.2d 112, 131 (2d Cir. 1983) ("Fee awards . . . must be made on the basis of adequate documentation.")); *see also Godinger*, 2024 WL 4145724, at *6 (holding that a prevailing plaintiff must provide detailed billing records specifying hours worked, rates charged, and related costs before the court can assess reasonableness of requested fees, and directing submission of supplemental documentation); *Gogo Apparel, Inc. v. Daruk Imps., Inc.*, No. 19-CV-5701, 2020 WL 4274793, at *8 (S.D.N.Y. June 11, 2020) ("[T]he party seeking the award has the burden of submitting evidence supporting the hours worked and rates charged." (alteration in original) (quoting *Sheldon v. Plot Com.*, No. 15-CV-5885, 2016 WL 5107072, at *18 (E.D.N.Y. Aug. 26, 2016), *report and recommendation adopted*, 2016 WL 5107058 (E.D.N.Y. Sep. 19, 2016))); *Pineda-Herrera v. Da-Ar-Da, Inc.*, No. 09-CV-5140, 2011 WL 2133825 (E.D.N.Y. May 26, 2011) ("[D]ocket entries and other official, contemporaneous records of an attorney's court appearances could, in the discretion of the trial judge, justify an award for the time reflected therein." (citation omitted)).  Attorneys' fees assessed at a flat-rate will not be awarded "unless the supporting documentation is detailed enough to satisfy the Second Circuit's requirement that 'attorneys' fees must be based on contemporaneous time records specifying relevant dates, time spent and work done.'" *Nationstar Mortg. LLC v. Atanas*, 285 F. Supp. 3d 618, 624 (W.D.N.Y. 2018) (quoting *Mack Fin. Servs. v. Poczatek*, No.

10-CV-3799, 2011 WL 4628695, at *10 (E.D.N.Y. Aug. 30, 2011), *report and recommendation adopted in part*, 2011 WL 4628692 (E.D.N.Y. Sep. 30, 2011)).

Allwood's default weighs in favor of awarding attorneys' fees and costs because the Note and April 2024 Loan Modification Agreement provide for the recovery of attorneys' fees and costs. (Note 3 ("If the Note Holder has required me to pay immediately in full . . . the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note . . . includ[ing] . . . reasonable attorneys' fees."); April 2024 Loan Modification Agreement 5 ("All costs and expenses incurred by Lender in connection with this [April 2024 Loan Modification Agreement], including . . . attorney's fees, shall be paid by [Allwood] . . . .").) *See Sec'y of U.S. Dep't of Hous. & Urb. Dev. v. Richmond Cnty. Pub. Adm'r*, 768 F. Supp. 3d 488, 496 (E.D.N.Y. 2025) (stating that a plaintiff in a foreclosure action may recovery attorneys' fees and costs "if the note or mortgage provides for such an award" (quoting *U.S. Bank Nat'l Ass'n v. Swezey*, No. 20-CV-91, 2022 WL 1422841, at *10 (E.D.N.Y. Mar. 24, 2022), *report and recommendation adopted*, 2022 WL 2390989 (E.D.N.Y. July 1, 2022))).

Plaintiff's counsel fails to provide any information specifying the law firm personnel who performed the legal services, their billing rates, or the date the legal services were rendered, and, instead, provides an "itemization of services" that "are averages based on volume as the firm is paid by the client a flat fee of $6,800." (Aff. of Services Rendered ¶¶ 4, 5.) Consistent with courts in this jurisdiction, the Court reduces counsel's request by half to $3,400. *See, e.g., Wells Fargo Bank, N.A., v. Drepaul*, No. 25-CV-2185, 2026 WL 1080004, at *5 (E.D.N.Y. Feb. 17, 2026) ("[C]ourts have reduced counsel's fee by fifty percent of the requested amount based on the record and affidavit provided." (collecting cases)), *report and recommendation adopted*, Order adopting Report and Recommendation (E.D.N.Y. Mar. 11, 2026); *Abass*, 2025 WL

875421, at *11 ("[C]ourts have reduced counsel's fee by [fifty] percent of the requested amount based on the record and affidavit provided."); *Freedom Mortg. Corp. v. Trejo*, No. 22-CV-7116, 2024 WL 3465241, at *16 (E.D.N.Y. July 19, 2024) (recommending the award of half of requested flat-fee attorneys' fees because counsel failed to provide contemporaneous time records), *supplemental and amended report and recommendation adopted*, Order adopting Supplemental and Amended Report and Recommendation (E.D.N.Y. Aug. 26, 2024); *Freedom Mortg. Corp. v. D'Amato*, No. 22-CV-7804, 2024 WL 662486, at *2 (E.D.N.Y. Feb. 17, 2024) (awarding half of requested flat-fee attorneys' fees because "in certain circumstances, and due to the increased use of flat fee arrangements, courts in this district have recognized that attorney's fees can be awarded, albeit at a discounted rate, even without contemporaneous time records"); *McLain*, 2023 WL 8473948, at *8 ("[I]n light of counsel's failure to provide contemporaneous time records . . . [the court] recommend[s] that [the] plaintiff's attorney's fees should be reduced by [fifty percent].").

In addition, Plaintiff seeks costs of $1,070, including the Court's filing fee for the Complaint, the notice of pendency filing fee, and service of process fees.  (Bill of Costs 2.) Plaintiff has provided a detailed breakdown in the Bill of Costs and supporting receipts.  As discussed above, the Note and April 2024 Loan Modification Agreement provide for the recovery of attorneys' fees and costs.  (Note 3; April 2024 Loan Modification Agreement 5.) Accordingly, the Court awards Plaintiff $1,070 for costs and disbursements.  *See McLain*, 2023 WL 8473948, at *8 (awarding reasonable costs with the plaintiff's submission of a detailed bill of costs); *Antoine v. Brooklyn Maids 26, Inc.*, 489 F. Supp. 3d 68, 105 (E.D.N.Y. 2020) ("Court fees reflected on the [c]ourt's docket and costs for which a claimant provides extrinsic proof, such as an invoice or receipt, are considered sufficiently substantiated, as is a sworn statement or

32

declaration under penalty of perjury that certain amounts were expended on particular items.” (quoting *Mendoza v. CGY & J Corp.*, 2017 WL 4685100, at *3 (S.D.N.Y. Oct. 17, 2017))).

### g.    Reformation of the legal description of the Property

Plaintiff requests that the legal description in the Mortgage recorded with the Kings County Clerk on November 28, 2026 in CRFN 2006000655463 be reformed to correct an error and provides the corrected legal description (the “Legal Description”).  (Legal Description, annexed to Compl. as Ex. A, Docket Entry No 1-1; Compl. ¶ 34.)  The Mortgage was recorded without a legal description.  (Compl. ¶¶ 33–36.)

“Where there is no mistake about the agreement and the only mistake alleged is in the reduction of that agreement to writing, such mistake of the scrivener, or of either party, no matter how it occurred, may be corrected.” *Harris v. Uhlendorf*, 24 N.Y.2d 463, 467 (1969) (quoting *Born v. Schrenkeisen*, 110 N.Y. 55, 59 (1888)); *see Hadley v. Clabeau*, 532 N.Y.S.2d 221, 225 (Sup. Ct. 1988) (“It is a well accepted principle of law that an instrument may be reformed for a mutual mistake of fact.  The general principle of law has been held to be particularly applicable to the reformation of a deed.” (citations omitted)); *see also Avail 1 LLC v. Latief*, No. 17-CV-5841, 2020 WL 5633869, at *8 (E.D.N.Y. Aug. 14, 2020) (recommending granting reformation where the legal description in the deed matched that proposed by the plaintiff), *report and recommendation adopted*, 2020 WL 5633099 (E.D.N.Y. Sep. 21, 2020); *U.S. Bank N.A. v. Christian*, No. 19-CV-427, 2020 WL 3918566, at *7 (E.D.N.Y. Feb. 25, 2020) (“Reformation of a contract is an equitable remedy that ‘allows courts to align erroneous legal instruments with the executing parties’ intent by transposing, rejecting, or supplying terms to correct or clarify the document.’” (quoting *OneWest Bank, N.A. v. Denham*, No. 14-CV-5529, 2015 WL 5562980, at *6 (E.D.N.Y. Aug. 31, 2015), *report and recommendation adopted*, 2015 WL 5562981 (E.D.N.Y. Sep. 21, 2015))), *report and recommendation adopted*, 2020 WL 3893015 (E.D.N.Y.

33

July 10, 2020); *Wilmington Sav. Fund Soc'y, FSB v. Costa*, No. 18-CV-2036, 2018 WL 6204620, at *6 (E.D.N.Y. Oct. 29, 2018) (recommending granting the plaintiff's application to reform the legal description of the mortgage), *report and recommendation adopted*, 2018 WL 6198954 (E.D.N.Y. Nov. 28, 2018); *SDF9 COBK LLC v. AF & NR LLC*, No. 12-CV-3078, 2014 WL 4244296, at *1–2 (E.D.N.Y. Aug. 26, 2014) (granting the plaintiff's motion to reform the mortgage to correct an erroneous property description arising out of a clerical error). Plaintiff asks that the description be changed to:

> ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Borough of Brooklyn, County of Kings, City and State of New York, bounded and described as follows:
>
> BEGINNING at a point on the Westerly side of East 56th Street, distant 329 feet 8 inches Southerly from the corner formed by the intersection of the Westerly side of East 56th Street and the Southerly side of Clarendon Road;
>
> THENCE Westerly parallel with Clarendon Road and part of the distance through a party wall, 100 feet;
>
> THENCE Southerly parallel with East 56th Street, 22 feet;
>
> THENCE Easterly parallel with Clarendon Road and part of the distance through a party wall, 100 feet to the Westerly side of East 56th Street;
>
> THENCE Northerly along the Westerly side of East 56th Street, 22 feet to the point of place of BEGINNING.[11]

(Legal Description 2.)

The Court grants Plaintiff's request to reform the legal description. The Mortgage states that the Property's Legal Description is "[a]ttached [h]ereto and [m]ade a [p]art [h]ereof," (Mortgage 5), and the Recording and Endorsement Cover Page reflects that twenty-three pages

---

[11] The Court removed the all-caps formatting in the Legal Description.

34

were recorded. (*Id.* at 2–23.) Although the Legal Description was not attached to the Mortgage, it matches the legal description provided in the foreclosure title certificate. (Foreclosure Title Certif. 8, annexed to Robson Decl. as Ex. A, Docket Entry No. 19-5.) Accordingly, because the omission of the legal description from the Mortgage was an error, the Court grants Plaintiff's request to reform the Mortgage to include the Legal Description of the Property, as provided by Plaintiff. (*See* Legal Description.) *See Latief*, 2020 WL 5633099, at *8 (granting reformation where the legal description in the deed matched that proposed by the plaintiff); *Costa*, 2018 WL 6198954, at *1 (granting the plaintiff's application to reform the legal description of the mortgage); *AF & NR LLC*, 2014 WL 4244296, at *1–2 (E.D.N.Y. Aug. 20, 2014) (granting the plaintiff's motion to reform the mortgage to correct an erroneous property description arising out of a clerical error).

## III.  Conclusion

For the foregoing reasons, the Court grants Plaintiff's motion for default judgment against Allwood and New York State Department of Taxation and Finance and awards Plaintiff damages in the amount of: (1) the unpaid principal balance of $436,555.31; (2) interest of $12,318.80 from June 1, 2024 to October 28, 2025, additional interest at a daily rate of $23.92 from October 29, 2025 until the entry of judgment, and post-judgment interest pursuant to 28 U.S.C. § 1961(a); (3) late fees of $159; (4) escrow advances of $13,833.26 and property inspection fees, property valuation fees, and title search expenses of $742.50; (5) attorneys' fees of $3,400; and (6) costs of $1,070, for a total amount of $468,078.87, excluding interest accrued after October 29, 2025.  Plaintiff shall propose a referee for the foreclosure and sale of the Property within fourteen days of this Memorandum and Order.  The Court also reforms the Mortgage to include the Legal Description.  The Court dismisses the claims brought against

"John Doe #1" through "John Doe #12" and directs the Clerk of Court to amend the caption to reflect the dismissal as requested by Plaintiff.

The Court denies Plaintiff's motion for default judgment against New York City Environmental Control Board, New York City Parking Violations Bureau, and New York City Transit Adjudication Bureau.

Dated: June 2, 2026
          Brooklyn, New York

                              SO ORDERED:


                              _____s/MKB_____
                              MARGO K. BRODIE
                              United States District Judge

36